EnergyNorth v. AEGIS et al          CV-95-591-B    9/30/98    P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**EnergyNorth Natural Gas, Inc.**

                    v.                                    C-95-591-B

**Associated Electric & Gas**
**Insurance Services, Ltd., et al.**

## MEMORANDUM AND ORDER

EnergyNorth Natural Gas, Inc., is the successor-in-interest to companies that manufactured coal gas in Concord, New Hampshire, from 1852 to 1952.  EnergyNorth brought this declaratory judgment action, pursuant to 28 U.S.C.A. § 2201 (West 1994) and N.H. Rev. Stat. Ann. § 491:22 (1997), against its predecessors' liability insurers.  Plaintiff seeks to recover costs incurred in responding to directives from the New Hampshire Department of Environmental Services (NHDES) to investigate and restore a site in Concord that became contaminated with by-products from its predecessor's coal-gasification operations.  In this order, I address EnergyNorth's contention that its coverage claims should be evaluated using the burden of proof specified by N.H. Rev. Stat. Ann. § 491:22-a (1997).

## I.  DISCUSSION

New Hampshire common law places the burden of proof on the party seeking coverage under an insurance policy to establish the

"existence and validity of the policy." Town of Peterborough v. Hartford Fire Ins. Co., 824 F. Supp. 1102, 1110 (D.N.H. 1993); Merchants Mut. Ins. Co. v. Transformer Serv., Inc., 112 N.H. 360, 364 (1972). Insurance coverage suits brought pursuant to New Hampshire's declaratory judgment act, N.H. Rev. Stat. Ann. § 491:22, however, are governed by N.H. Rev. Stat. Ann. § 491:22-a, which provides that "the burden of proof concerning coverage shall be upon the insurer whether he institutes the petition or whether the claimant asserting the coverage institutes the petition." Accordingly, if EnergyNorth has properly based its action for declaratory relief on section 491:22, the burden of proof will lie with the defendant insurers to disprove EnergyNorth's coverage claims.

The principal obstacle to EnergyNorth's contention that its claims are subject to section 491:22-a is N.H. Rev. Stat. Ann. § 491:22(III), which provides in pertinent part that: "[n]o petition shall be maintained under this section to determine coverage of an insurance policy unless it is filed within 6 months after the filing of the writ, complaint, or other pleading initiating the action which gives rise to the [coverage] question." Dictum in a recent First Circuit Court of Appeals opinion suggests that this section should be interpreted expansively to prevent an insured from basing a coverage claim on section 491:22 unless the claim arises from an underlying lawsuit in which the insured is named as a defendant. See New Hampshire Ball Bearings v. Aetna Cas. and Sur. Co., 43 F.3d 749, 752 (1st

2

Cir. 1995). If this dictum correctly interprets section 491:22(III), EnergyNorth could not base its coverage claim on section 491:22 as NHDES has not brought suit against it.

Defendants do not invoke the Ball Bearings court's dictum in challenging EnergyNorth's right to base its claim on section 491:22. Instead, they argue that the current action does not comply with section 491:22(III) because it was commenced well more than 6 months after NHDES issued a letter to EnergyNorth directing it to begin an investigation of possible contamination at the Concord site. In other words, defendants concede that an insured may base a declaratory judgment claim on section 491:22 even though it has not been named as a defendant in an underlying lawsuit, but argue that NHDES's directive to EnergyNorth qualifies as a "writ, complaint, or other pleading" triggering section 491:22's 6-month limitations period.

I begin by examining the First Circuit's dictum and then consider the merits of defendants' argument that the NHDES directive is a "writ, complaint, or other pleading" as that phrase is used in section 491:22(III).

A. **Does Section 491:22(III) require an underlying lawsuit against the policyholder in order to base an insurance coverage claim on section 491:22?**

The First Circuit appeared to endorse the most expansive possible reading of section 491:22(III) in its recent Ball Bearings decision. See 43 F.3d at 752. There, the court determined that a policyholder, knowing that its disposal of hazardous wastes was certain to result in injury to property,

could not successfully claim a right to coverage under the defendant's liability insurance policies.  See Id.  In reaching this conclusion, the court observed in dictum that: "We note that the district court properly found that, because there is no underlying state court lawsuit in this case, the burden shifting framework of New Hampshire's declaratory judgment act . . . does not apply . . . ."  Id. at 752.  The court did not explain its reasoning, but instead appeared to adopt the trial court's conclusion that this result was compelled by the New Hampshire Supreme Court's decisions in Jackson v. Federal Ins. Co., 127 N.H. 230 (1985), and Scully's Auto-Marine Upholstery, Inc. v. Peerless Ins. Co., Inc., 136 N.H. 65 (1992) ("Scully's").  See New Hampshire Ball Bearings v. Aetna Cas., 848 F. Supp. 1082, 1089-90 (D.N.H. 1994).  If, as the First Circuit's dictum suggests, the New Hampshire Supreme Court has determined that a policyholder may not base a claim on section 491:22 unless the insured has been named as a defendant in an underlying lawsuit, the matter is no longer open for debate and I cannot allow EnergyNorth to base its coverage claim on section 491:22.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  However, I am free to reach a contrary conclusion if the New Hampshire Supreme Court has not resolved the question and the relevant precedents suggest that the court would arrive at a different result.  See Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 458-59 (1st Cir. 1992) (court not obligated to follow unconsidered dictum). Thus, I first examine Jackson and Scully's

4

to determine whether either decision is controlling.

### 1. Significance of <u>Jackson</u> and <u>Scully's</u>.

In both <u>Jackson</u> and <u>Scully's</u>, the New Hampshire Supreme Court examined the issue of whether a party may base an insurance coverage claim on section 491:22 when the lawsuit giving rise to the coverage dispute is brought in a foreign court. In <u>Jackson</u>, the court observed that the plain language of the statute as then amended spoke only in terms of underlying actions commenced by the filing of a "writ."[1] 127 N.H. at 232. The court concluded that because a federal action is commenced by filing a "complaint" and not a "writ," an action commenced in federal court did not constitute an underlying action for the purpose of satisfying section 491:22(III). <u>Id.</u> at 232.

Relying on its decision in <u>Jackson</u>, the <u>Scully's</u> court concluded that an action commenced in a foreign state court also does not constitute an underlying action for the purpose of satisfying section 491:22(III). <u>See</u> 136 N.H. at 67. In so holding, the court reasoned that section 491:22(III) had originated as a "court cleaning bill." <u>Id.</u> (quoting <u>Jackson</u>, 127 N.H. at 233 (quoting, in turn, N.H. Senate Journal, at 627 (May 24, 1967) (stating that section 491:22(III) will "do away with the procedure of a few days before the trial [of an underlying

---

[1] The language of the statute as then amended read: "No petition shall be maintained under this section to determine coverage of an insurance policy unless it is filed within 6 months after the filing of the writ which gives rise to the question." N.H. Rev. Stat. Ann. § 491:22 (1993) (codified as amended at N.H. Rev. Stat. Ann. § 491:22(III)).

dispute], a person filing a declaration petition," thereby delaying resolution of the original matter and clogging courts' dockets)). Thus, because the New Hampshire legislature lacked the power to clean the dockets of a foreign state's courts, only actions brought in New Hampshire state courts could satisfy the legislative intent expressed in section 491:22(III). See id.

Neither Jackson nor Scully's expressly considered whether section 491:22(III) applies in cases where the insured has not yet been sued in an underlying action. See Robert J. Lynn, Declaratory Judgments in Insurance Cases: Recent Amendment Solves the "Where to Sue" Problem but Leaves the "When to Sue" Question Unresolved, 36 N.H.B.J. 58, 64 (1995) (concluding that the Ball Bearings court's reading of Jackson and Skully's is broader than is compelled by either decision). Although the New Hampshire Supreme Court conceivably could decide to extend its reasoning in both decisions to cases in which an underlying lawsuit has not yet been commenced against the insured, I am unwilling to assume this result without first examining the legislative history of section 491:22(III) and other Supreme Court decisions bearing on the subject.[2]

_____

    [2] When confined to their facts, Jackson and Scully's have been superseded by legislative amendment to section 491:22(III). Specifically, the New Hampshire legislature has amended section 491:22(III) to allow New Hampshire state and federal courts to take jurisdiction over a declaratory judgment action to determine insurance coverage brought pursuant to section 491:22(III), even where the action giving rise to the insurance dispute was brought in federal court or the court of another state. See 1994 N.H. Laws 37:1 ("A petition for declaratory judgment to determine coverage of insurance policy may be instituted as long as the court has personal jurisdiction over the parties to the matter,

6

## 2. The legislative history of Section 491:22(III).

Section 491:22(III) was added to the declaratory judgment statute by a 1967 amendment. Proposed by the New Hampshire Superior Court, the amendment was designed "to curtail the practice, apparently wide-spread at the time, of litigants waiting until the eve of trial of an underlying lawsuit to file a declaratory judgment action to determine the availability of insurance coverage." Lynn, supra, at 59. Such a practice resulted in "last-minute requests for continuances of the trial of the underlying suit until the coverage issues were resolved," clogging court dockets. Lynn, supra, at 59, 65. As Senator Leonard, spokesperson for the Senate Judiciary Committee which recommended passage of the measure, explained: "This [bill] will do away with the procedure of a few days before the trial, a person filing a declaration petition. . . . It is really a court cleaning bill." N.H. Senate Journal, at 627 (May 24, 1967). Thus, the purpose of the amendment was to increase the efficiency of the judicial process by encouraging declaratory judgment actions to be brought -- and resolved -- well before trial in the underlying action.

_____

even though the action giving rise to the coverage question is brought in federal court or another state court.") (codified at N.H. Rev. Stat. Ann. § 491:22(III) (1997)); 1987 N.H. Laws 150:1 (granting New Hampshire federal district courts jurisdiction to hear N.H. Rev. Stat. Ann. § 491:22 actions to determine insurance coverage) (codified at N.H. Rev. Stat. Ann. § 491:22-c (1997)); see generally Lynn, supra, at 59-60, 62-64 (1995) (discussing history of amendments to section 491:22).

7

During the Senate Judiciary Committee hearings on whether to recommend passage of the 1967 amendment, Senator Leonard specifically rejected the suggestion that the amendment's purpose was to limit the availability of declaratory relief to instances in which an underlying suit was actually pending. At one hearing, a critic of the amendment expressed concern that the amendment was motivated by a desire to prohibit the filing of declaratory judgment actions unless there was a pending underlying lawsuit. See Hearing on SB 66, Senate Comm. on Judiciary (Mar. 9, 1967) (statement by Irving Soden, spokesperson for the American Insurance Association). In response, Senator Leonard stated that such a worry was unfounded. He explained that the amendment was not intended to "change the basic [declaratory judgment] law. It adds [only] one thing [to the law]. It says that when there is . . . an accident case in the courts and either party wants to test . . . coverage under a policy, it must do so within six months. This will not concern any other rights." See Hearing on SB 66, Senate Comm. on Judiciary (Mar. 28, 1967) (statement by Senator Leonard) (emphasis added).

Section 491:22(III) represents the rare case in which legislative history provides incontrovertible evidence of a statute's intended meaning. This history demonstrates that the amendment that gave rise to the section was intended simply to increase the efficiency of the judicial process by requiring litigants to file their declaratory judgment actions no later

than 6 months after the underlying action was commenced. Moreover, when confronted with the suggestion that the amendment might bar the use of section 491:22 in instances where there was no pending underlying lawsuit, the amendment's sponsor explicitly denied that it would have this effect. Since the legislative history of section 491:22(III) is devoid of any indication that a more expansive reading was intended, it is highly unlikely that the New Hampshire Supreme Court would adopt the expansive reading suggested by the Ball Bearings court's dictum. See Claremont School Dist. v. Governor, 712 A.2d 612, 613 (N.H. 1998) ("in interpreting the law, we are bound to be mindful of its apparent purpose as disclosed by its language in light of its legislative history")(quoting Chagnon v. Union-Leader Corp., 104 N.H. 472, 476 (1963)); Appeal of Coastal Materials Corp, 130 N.H. 98, 103 (1987).

### 3. Other New Hampshire Supreme Court decisions applying Section 491:22(III).

A number of New Hampshire Supreme Court decisions support the construction of section 491:22(III) suggested by its legislative history. In Andrews v. Nationwide Mut. Ins. Co., 124 N.H. 148, 151-52 (1983), the court rejected a claim that section 491:22(III) prevented a policyholder from basing a first-party insurance coverage claim on section 491:22. In reaching this conclusion, the court necessarily rejected the argument that there must always be an underlying action pending against the policyholder in order for the insured to base a claim for coverage on section 491:22. The court has also entertained

9

declaratory judgment actions based upon section 491:22 to resolve coverage questions concerning liability policies even though an underlying action was not pending against the insured when the action was commenced. See e.g., Portsmouth Hospital v. Indemnity Ins. Co. of North America, 109 N.H. 53, 55-57 (1968) (hospital permitted to maintain declaratory judgment action to determine whether removal of mentally incompetent patient to another facility violated policy's cooperation clause); Auclair v. Allstate Ins. Co., 118 N.H. 626, 627-28 (1978) (declaratory judgment action entertained despite absence of underlying suit). Finally, in Coakley v. Maine Bonding & Cas. Co., 136 N.H. 402, 405-08 (1992), the court reached the merits of a declaratory judgment action based on section 491:22 in an environmental insurance coverage case where the insured had not been sued. In Coakley, the insured sought a declaration that its insurers were obligated to reimburse it for its costs incurred in responding to the directives of an administrative agency. Even though the insured had not been named as a defendant in an underlying lawsuit, the court reached the merits of the case. See Coakley, 136 N.H. at 419. As the question of whether an insured may base a coverage claim on section 491:22(III) bears on the court's jurisdiction to consider the claim, it is unlikely that the Coakley court would have reached the merits of the case if section 491:22(III) required a pending underlying action against the insured.

10

In summary, the legislative history of section 491:22(III) and a number of New Hampshire Supreme Court decisions decided before and after <u>Jackson</u> and <u>Skully's</u> strongly suggest that the New Hampshire Supreme Court would not interpret the law in the manner suggested by the <u>Ball Bearings</u> court's dictum. Accordingly, I decline to follow the dictum in this case.

**B.** **<u>Does Section 491:22(III)'s 6-month limitation period apply to declaratory judgment actions in which an underlying lawsuit has not yet been commenced?</u>**

Defendants do not base their argument on the <u>Ball Bearings</u> court's dictum. Instead, they argue that EnergyNorth cannot base its claim on 491:22 because NHDES's 1992 site-investigation letter to EnergyNorth qualifies as a "writ, complaint, or other pleading" triggering the commencement of section 491:22(III)'s 6-month limitations period. I reject defendants' construction of section 491:22(III) because it is supported by neither the plain language of the statute nor its legislative history.

A New Hampshire court begins an exercise in statutory construction with an examination of the language of the provision at issue. <u>See</u> <u>Cheever v. Southern New Hampshire Regional Medical Center</u>, 141 N.H. 589, 591 (1997). The court will not add words to the statute that the legislature has not seen fit to add. <u>See</u> <u>Lorette v. Peter-Sam Inv. Properties</u>, 140 N.H. 208, 211 (1995). Here, the disputed portion of section 491:22(III) is unambiguous: the phrase "writ, complaint, or other pleading initiating the action" clearly refers to documents that initiate judicial proceedings. <u>Black's Law Dictionary</u>, for example, defines "writ"

11

as a "written <u>judicial</u> order to perform a specified act . . . as in an 'original writ' for instituting an action at common law." <u>Black's Law Dictionary</u> 1608 (6th ed. 1990). It also defines "complaint" as the "original or initial pleading by which an action is commenced under the codes or Rules of Civil Procedure." <u>Id.</u> at 285; <u>see also</u> Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Moreover, because the plain meaning of "writ" and "complaint" refers only to documents that actually initiate judicial proceedings, I must construe the term "other pleading initiating the action" as similarly referring only to documents that actually initiate judicial proceedings. See <u>State v. Wilson</u>, 140 N.H. 44, 45 (1995) ("General words in a statute that follow specific words . . . are construed to include only items of a similar character to the specific ones mentioned.").

The legislative history of section 491:22(III) further supports the conclusion that the phrase "writ, complaint, or other pleading initiating the action" refers to documents that initiate judicial proceedings and not to documents that stop short of doing so. As noted above, in 1967, the legislature amended section 491:22 to require that declaratory judgment actions be filed within 6 months of the "writ which gives rise to the [coverage] question." See 1967 N.H. Laws 432:1 (codified as amended at N.H. Rev. Stat. Ann. § 491:22(III) (1997)), Lynn, <u>supra</u>, at 59. The amendment was passed with the intent of clearing court dockets by encouraging declaratory judgment

12

actions to be brought and resolved at the same time as any pending underlying suits. See N.H. Senate Journal, at 627 (May 24, 1967) (statement by Senator Leonard); Lynn, supra, at 59, 65. Accordingly, the term "writ" clearly refers only to actual lawsuits that could clog court dockets if the filing of a declaratory judgment petition were unreasonably delayed.

The New Hampshire legislature again amended section 491:22 in 1994, this time to explicitly allow declaratory judgment actions even where such actions were brought in response to underlying lawsuits filed in a federal or foreign state court. See 1994 N.H. Laws 37:1 (codified at N.H. Rev. Stat. Ann. § 491:22(III) (1997)). Because federal suits are initiated by complaint, the New Hampshire legislature inserted the term "complaint, or other pleading" after the word "writ" to emphasize that a section 491:22 action could be maintained no matter where the underlying lawsuit was filed. Lynn, supra, at 63; Hearing on SB 722, Senate Comm. on Insurance (Jan. 27, 1994) (statement by Leslie Nixon, spokesperson for the New Hampshire Trial Lawyers' Association) ("[W]e're just asking you to change the statute to make it clear that it doesn't matter whether the underlying case . . . is brought by a writ or a complaint."). Thus, because the term "complaint, or other pleading" was added to emphasize that section 491:22 actions could be maintained regardless of where the underlying lawsuit was filed, I view the term as referring to documents that actually initiate a lawsuit rather than to communications that stop short of doing so.

13

Because the ordinary meaning of the provision at issue and the legislative history of the provision reveal that it refers to documents that actually initiate a lawsuit, I hold that the 1992 NHDES letter to EnergyNorth (a type of document that does not initiate a lawsuit) is not a "writ, complaint, or other pleading" for the purpose of triggering the section 491:22(III) period of limitations.[3]

## II. CONCLUSION

After reviewing the legislative history of section 491:22(III) and the relevant New Hampshire Supreme Court precedents, I am convinced that the section's 6-month limitation period does not apply in cases such as this where the insured has

---

[3] Defendants' argument to the contrary borders on the frivolous. Defendants predict that based on its decision in Coakley, 136 N.H. at 417-18, the New Hampshire Supreme Court would find, in the instant case, that the type of letter NHDES sent to EnergyNorth is the constructive equivalent of a "writ, complaint, or other pleading" for the purpose of triggering the section 491:22(III) period of limitations. In Coakley, the court examined whether the type of letter NHDES sent to EnergyNorth constituted a constructive "suit" for the purposes of triggering an insurer's contractual duty to indemnify an insured. 136 N.H. at 405. The court ruled that such a letter could constitute the commencement of a suit where the meaning of the term "suit" as used in the insurance policy was ambiguous and where the insured's asserted interpretation comes within any one of the possible meanings of the term. Id. at 417. Because the court found that the insured's interpretation of the contractual term "suit" as "an attempt to gain an end by legal process," id. (internal quotations omitted), was a possible meaning of the term, the court held that it was bound by its rules of policy interpretation to adopt that meaning, id. at 418. Therefore, Coakley is clearly limited to instances in which a court finds the meaning of the term "suit" as used in an insurance contract to be ambiguous and, therefore, is bound by the applicable rule of decision requiring that such policy terms be construed in favor of coverage.

14

not been named in an underlying lawsuit.  Accordingly, I hold both that EnergyNorth is entitled to base its declaratory judgment action on section 491:22 and that its claims are to be judged using the burden of proof specified by section 491:22-a.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 30, 1998

cc:   Bruce Felmly, Esq.
      Robert Gallo, Esq.
      Vincent Ziccolella, Esq.
      Donald Uttrich, Esq.
      Emily Rice, Esq.
      Paul Leodori, Esq.
      John Putnam, Esq.
      Jeffrey Osburn, Esq.
      John Guarascio, Esq.
      Michael Aylward, Esq.