Hillsborough,
No. 5095.

ROGER H. CHAGNON

*v.*

UNION-LEADER CORPORATION.

Argued March 5, 1963.
Decided April 30, 1963.

*Craig & Craig* and *McLane, Carleton, Graf, Greene & Brown* and *G. Marshall Abbey* (*Mr. Abbey* orally), for the plaintiff.

*Fuller & Flynn* and *Thomas M. Dudley, Jr.* (*Mr. Thomas E. Flynn, Jr.* orally), for the defendant.

BLANDIN, J. The first question before us is whether interest on the verdict shall be computed under RSA 524:1 or RSA 524:1-b (supp). The difference, which sum is being held by the clerk of court, amounts to $25,398.25.

RSA 524:1 reads as follows: "FORM: INTEREST. Judgments for debt, damages or costs shall be rendered in dollars and cents; and, in rendering judgment for the debt or damages found by verdict, report of an auditor or otherwise, interest shall be added from the time of such finding to the rendition of judgment."

RSA 524:1-b (supp) provides: "[NEW] INTEREST FROM DATE OF WRIT. In any action in which a verdict is rendered or a finding made for pecuniary damages for personal injuries to the plaintiff, or for wrongful death or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon from the date of the writ, even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

The familiar test to determine which section applies here is to inquire as to what was the legislative intent. *L'Esperance* v. *Sherburne*, 85 N. H. 103, 108. This inquiry, in turn, resolves itself into a question of fact to be determined by all the competent

evidence available. *Gagnon* v. *Pronovost,* 96 N. H. 154, 158; see *Hogan* v. *Lebel,* 95 N. H. 95, 97. Such evidence here consists primarily of the language of the statute and its legislative history.

In their broadest legal sense, it is true that actions for "personal injuries" embrace a great variety of actionable wrongs, such as breach of promise suits (*Stewart* v. *Lee,* 70 N. H. 181, 185) — a cause now repealed by RSA 508:11 — suits for seduction, or libel. *Gray* v. *Wallace,* 319 S.W. 2d (Mo.) 582, 584-585; 43 C.J.S. 1115. In a more restrictive sense, the meaning is limited to physical injuries to the person. *Gray* v. *Wallace, supra,* 584; 43 C.J.S. 1115. In the ordinary layman's understanding, it may be doubted whether "personal injuries" signifies anything except physical injuries to the person, resulting from some external force, or trauma, as it is often called. A personal injury is "A hurt or damage done to a man's *person,* such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or his reputation. The phrase is used chiefly in connection with actions of tort for negligence." Black's Law Dictionary, 4th *ed.,* "Personal Injury" *p.* 925. However this may be, the question before us is in what sense did our Legislature use these words in RSA 524:1-b (supp), since their intent, rather than any arbitrary canons of statutory construction, is controlling. *North Hampton &c. Ass'n* v. *Commission,* 94 N. H. 156, 159.

At the outset, it should be noted that the heading of the original enactment of RSA 524:1-b (supp), being Laws 1957, *c.* 201, *s.* 1, is as follows: "An act relative to interest from date of writ in *certain* civil actions." (Emphasis supplied). Obviously, the purpose was to limit its effect to a definite class of cases. There was no design, express or implied, to repeal RSA 524:1, but section 1-b, *id.,* was merely "supplemental" to it, and we have so held. *Pepin* v. *Beaulieu,* 102 N. H. 84, 89.

This failure to repeal RSA 524:1 shows that it was still intended to apply to other than the "certain" class of actions covered by 1-b (supp). An examination of the legislative history of *s.* 1-b (supp), including the transcript of hearings and the House and Senate Journals (*Colby* v. *Broderick,* 96 N. H. 316, 318), sheds light on what class of cases the new section was designed to cover. The record shows unmistakably that the main concern of the lawmakers was over the delay in accident cases where physical injury to the person was sustained, particularly automobile accidents.

On June 5, 1957, persons appearing before the Senate Judiciary Committee on House Bill 374, which as finally amended and passed became RSA 524:1-b (supp), spoke as follows:

"REP. E. HAROLD YOUNG, Sponsor: This is a very simple bill; it comes as a result of long and sad experience in many cases in relation to monies owed where the time elapsed between the time of the accident, or the time of the accrual of the obligation, and the settlement. It works, therefore, a hardship on many people. I was personally involved in an automobile accident when it was not my fault. It was agreed that I get my reward, which was $1,000 less than it cost me. Most of that difference was the cost of money borrowed to sustain myself through the years intervening between the time of the accident and the time of the settlement, which was about four years. The negligence, or obligation to pay, did not arise over a period of years; it arose at that instant only, at the time of the accident. I have talked with three Superior Court justices about this bill, before it was even drafted, and it was their opinion that it would help to get rid of the log jams in the court . . . The insurance companies sometime figure that the suit will not be tried for an indefinite period. This bill is to compel them to do this; much money is involved in this operation. It is a common occurrence to wait so that they (the companies) have the benefit of the interest on the money, which should have been paid much sooner, and the accrual over a period of years is substantial. It is to the advantage of the insurance companies to keep the money as long as they can. If the court says no, there is no problem; but money borrowed cost high rates. . . .

"SEN. KARKAVELAS: I have had experience with insurance adjustors and have seen them settle for a ridiculous sum. I have no sympathy with the insurance companies in that respect. I am in favor of their being made to pay every cent of interest for this procrastination. They can outwait any claimant."

On the next day Senator Cleveland, majority floor leader of the Senate and the sponsor of S. B. 77, which was incorporated in H. B. 374 as an amendment, in urging its passage, said: "Mr. President, there are two amendments. The first one rewrites all of the bill [H. B. 374] as it came to us because of errors in reference to sections. It clarifies the law [i.e., with reference to actions for 'debt,' 'account stated' or 'liquidated damages.' RSA 524:1-a (supp)] as many attorneys believe it to exist. The

second amendment [*s.* 1-b (supp) ] is the change in the law on personal injury cases — interest will run from the date of the writ which is not the case now. What it means is this — if you bring an action in personal injury case, there may be some lapse of time before the case is heard. This was imposed by the insurance companies. According to them the only thing that holds up settlement is lawyers who are asking much to [sic] much. This is sound legislation and quite a few states already have it." **1957** Journal of the Senate 672.

At these hearings, it is apparent that by "personal injuries" the committee, the witnesses and those sponsoring or opposing the bill, meant physical injuries to the person sustained as a result of the application of external physical force or trauma, as it is sometimes called. These occur most often in automobile accidents. It is significant, too, that the opposition of the bill came from a representative of insurance companies and that his remarks were directed solely to accident cases.

The action of the Senate in amending H. B. 374 by adding after "personal injuries" the words "or for wrongful death, or for consequential damages" is consistent with an intent to limit the application of *s.* 1-b (supp). The addition of the words "even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law" was obviously to cover the situation created by the statute limiting the amount of liability in death cases. RSA 556:13 (supp).

In interpreting the law, we are bound to be mindful of its apparent purpose, as disclosed by its language in the light of its legislative history. *Clough* v. *Clough,* 80 N. H. 462, 464. So far as appears, the sole objective of *s.* 1-b (supp) was to expedite settlement in cases involving injuries to the person or property. The repeated and exclusive reference of the Legislature and the witnesses, bearing on the evil which they sought to remedy, was to the delays imposed by "insurance companies" in settlements for "automobile" and other "accidents."

In the light of the foregoing, we are unable to adopt the plaintiff's view that RSA 524: 1-b (supp) was "intended to cover all cases . . . *ex contractu* and *ex delicti* in which unliquidated damages are recovered." Among other factors, it appears highly unlikely, if such had been the legislative intent, that they would not have repealed RSA 524:1 *in toto,* rather than resorting to the clumsy expedient, as urged by the plaintiff, of having RSA

524:1 applicable from the date of the verdict to the date of the judgment, and s. 1-b (supp) operative from the date of the writ to the date of the verdict. Rather, as already stated, we believe that s. 1-b (supp) was directed toward avoiding the delays in accident cases involving physical injuries to the person, especially such as are sustained in motor vehicle accidents. See *Pepin* v. *Beaulieu*, 102 N. H. 84, 89.

In conclusion, we find no evidence in the legislative history of this statute that libel cases, or other similar actions, were a matter of legislative concern because such were crowding the dockets or for any other reason. There was no mention of anything of the sort, and as to what the Legislature might have done had it considered such matters, is not for us to speculate. If it may be said that the letter of the law, within its broad meaning, would include libel suits as within the term "personal injuries," such appears not to have been the legislative purpose. Therefore, these actions, not being within the spirit of the legislation, are not covered by the statute. *State* v. *Muscarello*, 92 N. H. 214, 215. In each case, the Court must seek the specific intent of the lawmakers in the particular legislation, and once disclosed, it controls any generalized statements elsewhere as to the meaning of the words used. *Spicer* v. *Claremont*, 104 N. H. 461. We therefore hold, in answering the first question transferred, that interest is to be computed from the date of the "finding" i.e., verdict under RSA 524:1 "at the rate of six dollars on a hundred dollars for one year . . . ." RSA 336:1.

If it be thought that section 1-b (supp) should be amended to cover libel and other tort actions of that nature, the remedy lies with the Legislature and not with the court.

What we have said disposes of the necessity of considering the second question transferred, and the order is

*Remanded.*

All concurred.