Merrimack
No. 97-001

CLAREMONT SCHOOL DISTRICT & a.

v.

GOVERNOR & a.
*(motion to vacate)*

May 8, 1998

*Alfano & Baroff*, of Manchester (*Paul J. Alfano* on the motion to vacate), for John M. Root.

*Kenneth D. Murphy*, of Concord, on the motion to join and concur in the motion to vacate, for Joseph L. Delahunty.

*Stein, Volinsky & Callaghan, P.A.*, of Concord (*Andru H. Volinsky* on the objection to the motion to vacate), for the plaintiffs.

*Philip T. McLaughlin,* attorney general (*Anne M. Edwards,* assistant attorney general, on the response to the motion to vacate), for the State.

HORTON, J. John M. Root, a member of the defendant board of education, moved to vacate the decision in *Claremont School District v. Governor,* 142 N.H. 462, 703 A.2d 1353 (1997) (*Claremont II*), on the grounds that Justice Batchelder's participation violated Part I, Article 35 and Part II, Article 78 of the New Hampshire Constitution and RSA 490:3 (1997). Defendant Joseph L. Delahunty, president of the New Hampshire Senate, moved to join and concur in Mr. Root's motion to vacate. The plaintiffs, five school districts, five students, and eight taxpayers and parents, objected to the motion to vacate and requested an award of attorney's fees.

The motion to vacate requires us to determine whether RSA 490:3 authorizes justices over the age of seventy to sit temporarily and, if so, whether the statute is constitutional. RSA 490:3 provides in part:

> I. The provisions as to the disqualification of justices of the superior court apply to justices of the supreme court. Whenever a justice of the supreme court shall be disqualified or otherwise unable to sit in any cause or matter pending before such court, the chief or senior associate justice of the supreme court may assign another justice to sit according to the provisions of paragraph II of this section.

> II. Upon the retirement, disqualification, or inability to sit of any justice of the supreme court, the chief justice or senior associate justice of the supreme court may assign a justice of the supreme court who has retired from regular active service to sit during supreme court sessions while the vacancy continues . . . .

> III. A justice assigned to sit temporarily on the supreme court pursuant to paragraph II of this section shall have all the authority of a supreme court justice to hear arguments, render decisions, and file opinions. No justice shall be assigned to sit on the supreme court in the determination of any cause or matter upon which he has previously sat or for which he is otherwise disqualified nor without his consent.

Interpretation of RSA 490:3 raises two issues: whether the term "retired" is intended to include justices over the age of seventy, and whether the term "otherwise disqualified" excludes justices over

the age of seventy. "When construing the meaning of statutes, we first look to the plain and ordinary meaning of the words used." *Appeal of Rowan*, 142 N.H. 67, 71, 694 A.2d 1002, 1004 (1997). "In interpreting the law, we are bound to be mindful of its apparent purpose, as disclosed by its language in the light of its legislative history." *Chagnon v. Union-Leader Co.*, 104 N.H. 472, 476, 190 A.2d 721, 724 (1963) (superseded on other grounds by Laws 1963, ch. 293).

■ The plain language of the statute contains no qualification as to age. The statute simply requires that a justice assigned to sit during supreme court sessions, when one of the justices holding office is disqualified or otherwise unable to sit, be "retired from regular active service." RSA 490:3, II. This condition was indisputably satisfied with the temporary assignment of Justice Batchelder.

Even if we assume ambiguity in the language of the statute, the legislative history shows that the lawmakers clearly intended retired supreme court justices over the age of seventy to be eligible for temporary assignments. In the late 1970s, there were a series of vacancies on the supreme court. Pursuant to then-existing statutory authority, *see* Laws 1947, 110:1, superior court justices were appointed to sit in the supreme court on numerous occasions. This apparently caused a backlog in the superior court and, in response, house bill 41 was introduced in the 1978 legislative session.

The original draft of the bill provided that "[t]he supreme court shall consist of a chief justice and 4 associate justices, appointed and commissioned as prescribed by the constitution, and such justices less than 70 years of age as may be retired from regular active service because of permanent disability or otherwise." *See* HOUSE AND SENATE BILLS AND RESOLUTIONS HB 41 (1978). Subsequent amendments to the bill specifically eliminated the age seventy limitation. *See* Hearing on HB 41 Before the House Judiciary Committee (May 24, 1978). In describing the bill's purpose, the bill's sponsor stated that "judges that have retired from the superior and supreme court may be recalled to fill a vacancy on the supreme court. The position is a temporary vacancy and the judge will be recalled on a day to day basis as needed." *Id.*

Since its passage, successive chief justices of the supreme court have assigned retired supreme court justices, who have attained the age of seventy, to temporarily sit on specific cases pursuant to RSA 490:3 at least fifteen times. *See, e.g., Claremont School Dist. v. Governor*, 138 N.H. 183, 193, 635 A.2d 1375, 1382 (1993) (retired Chief Justice Grimes sat by special assignment under RSA 490:3);

*see also* RSA 493:1 (1997) (requiring judge to document date of birth at office of secretary of state). No previous challenge to this practice has been made, and the legislature has not otherwise acted to change the statute. *See Keniston v. The State*, 63 N.H. 37, 38 (1884) (reasoning that lack of court challenge or legislative action supports court's constitutional interpretation).

■ Mr. Root contends that Justice Batchelder's participation in *Claremont II* violated the provision of RSA 490:3 that no retired justice "shall be assigned to sit on the supreme court in the determination of any cause or matter upon which he has previously sat or for which he is otherwise disqualified." RSA 490:3, III. Mr. Root argues that because the constitution prohibits those over the age of seventy from holding judicial office, Justice Batchelder was "otherwise disqualified" to sit. A plain reading of RSA 490:3 in context with the statutory scheme as a whole, however, reveals that the "disqualification" referred to is not the age limitation in Part II, Article 78, but, rather, the statutory disqualification delineated in RSA chapter 492 (1997) (Disqualification of Justices). Pursuant to that statute,

> [a] justice shall not sit in any case in which he has been concerned as party or attorney or in any appeal in which he has acted as judge in the court below, or act as attorney or be of counsel for either party or give advice in any matter pending or which may come before the court for adjudication.

RSA 492:1 (1997); *see also* RSA 490:7 (1997) (temporary justice may be assigned if "one or more of the justices present is disqualified to sit in any case"); SUP. CT. R. 38 (conflict of interest). Additionally, given that the legislature intended to include retired justices over the age of seventy as qualified for temporary service, it would be illogical to construe the statute as disqualifying a retired justice because of age.

Having concluded that RSA 490:3 authorizes justices over the age of seventy to sit temporarily, we turn to the question of whether the statute is constitutional. Part II, Article 78 of the State Constitution provides that "[n]o person shall hold the office of judge of any court . . . after he has attained the age of seventy years." *See also* N.H. CONST. pt. I, art. 35. In order to hold a judicial office, one must be "nominated and appointed by the governor and council." N.H. CONST. pt. II, art. 46. In addition, a judicial office holder is "commissioned to hold office during good behavior, except where the

constitution otherwise provides." *Opinion of the Justices*, 128 N.H. 17, 19-20, 509 A.2d 746, 748 (1986) (citation omitted).

█ The supreme court consists of five justices appointed and commissioned as prescribed by the constitution. *See* RSA 490:1 (1997). When Justice Batchelder retired in 1995, he ceased to hold the office of justice. Justice Batchelder, however, retained his status as a judicial officer

> but he ha[d] no power as a judicial officer until the happening of a contingency, namely, his assignment and voluntary acceptance thereof as a judge of the . . . court. That assignment [did] not prolong his term of office. It merely ha[d] the effect of vesting in him the powers of a judge of the . . . court during the period specified in the assignment.

*Pickens v. Johnson*, 267 P.2d 801, 805 (Cal. 1954). As we recognized in *Opinion of the Justices*, 128 N.H. at 19, 509 A.2d at 748, judicial officers have the power to render judgments because they have been nominated and appointed in accordance with the constitution. Thus, unlike a marital master who is not nominated and appointed, Justice Batchelder retained authority to render judgment. *See id.* at 21, 509 A.2d at 748 (proposed statute authorizing marital masters to render judgments is unconstitutional).

In November 1995, Justice Broderick, following his nomination by the Governor and appointment by the Council, assumed the office made available by Justice Batchelder's retirement. Once designated a judicial officer, Justice Broderick was qualified to hold office. *See* N.H. CONST. pt. II, art. 73 (judicial officers who are "appointed, commissioned and sworn" are entitled to hold office during good behavior). Therefore, at the time of Justice Batchelder's temporary assignment to *Claremont II* in September 1997, no judicial office was available on the supreme court for him to fill. "A retired judge assigned to active duty is authorized to exercise the powers of an office while serving on assignment. He does not by virtue of the assignment, however, hold an office that could possibly 'become vacant' upon termination of his powers either by death or operation of law." *Werlein v. Calvert*, 460 S.W.2d 398, 401 (Tex. 1970).

When Justice Thayer recused himself from *Claremont II*, he did not cease to hold office. He continued to function in his office by, among other duties, deciding cases, reviewing notices of appeal, deciding pending motions, and acting on all other matters before the court. Justice Batchelder did not replace Justice Thayer as an office

holder but was merely enabled to use his power as a judicial officer on a temporary basis, according to RSA 490:3, to "hear arguments, render decisions and file opinions" concerning one case. *See Opinion of the Justices*, 128 N.H. at 19, 509 A.2d at 748 (judicial officer vested with authority to render judgment).

"[W]e see no constitutional conflict between mandatory retirement for age and legislative authorization for calling a judge back into service from retirement [on] a 'case-to-case' basis." *Nelson v. Miller*, 480 P.2d 467, 476 (Utah 1971). The temporary assignment of Justice Batchelder did not and could not prolong his term of office, but rather enabled him to exercise his power as a judicial officer in a specific matter.

The power of the legislature to authorize the assignment of a retired justice on a temporary basis is implicitly derived from its constitutional authority, pursuant to Part II, Article 4 of the State Constitution, "to erect and constitute judicatories and courts of record, or other courts." *Cf.* N.H. CONST. pt. II, art. 72-a (vesting judicial power in the courts); *Opinion of the Justices*, 128 N.H. at 19, 509 A.2d at 747 (judicial officer, as a member of the judicial branch, vested with authority to render judgment pursuant to Part II, Article 72-a). This authority empowers the legislature to determine the composition of courts, *see, e.g.*, RSA 490:1 (the number of presiding supreme court justices), and create mechanisms to facilitate the administration of justice, *see, e.g.*, RSA 490:7 (1997) (temporary justice may be assigned if "one or more of the justices present is disqualified to sit in any case"); RSA 490:8 (1997) (court may order master to hear and determine questions of fact pending before supreme court); RSA 491:23 (1997) (justices retired by reason of age limitation may be appointed as referees, auditors, and masters); RSA 493-A:1 (1997) (justices retired by reason of age limitation with ten years service shall become judicial referees); RSA 547:37 (1997) (former judge of probate court retired by reason of age limitation may be appointed as master). An integral part of this authority is the legislature's ability to enable a retired justice to exercise authority as a judicial officer on a temporary assignment.

While it is clear that the legislature has no prerogative to invest retired justices over age seventy with the panoply of powers associated with judicial office, it does have the constitutional authority to authorize limited temporary assignment of retired justices over age seventy to ensure the adequate and orderly administration of justice.

By enacting RSA 490:3, the legislature provided an invaluable resource that would be otherwise unavailable to the judicial branch

of government in fulfilling its constitutional responsibilities. Permitting retired justices to serve in temporary assignments after the age of seventy substantially increases judicial manpower by making available a greater number of experienced justices. Of course, if the legislature disagrees with our conclusions concerning RSA 490:3, it has the sole authority to amend the statute.

Accordingly, we deny the motion to vacate. We grant the motion to join and concur in the motion to vacate, and we deny the plaintiffs' request for attorney's fees.

*Motion to vacate denied;*
*motion to join and concur granted;*
*motion for attorney's fees denied.*

THAYER, J., did not participate; BATCHELDER, J., retired, specially assigned under RSA 490:3, did not participate; the others concurred.