BRYAN, Justice
(concurring in part and dissenting in part).
I was not yet sitting on this Court when this case was decided originally; therefore, I did not vote on this case on original submission. However, in reviewing the application for rehearing, I have considered both the rehearing materials and the materials submitted on original submission, including a video recording of oral argument. I concur in the holding of the opinion issued on application for rehearing that addresses the issue of the disqualification of Special Justice Harwood. However, I agree completely with Justice Shaw’s dissenting opinion on original submission, and I also agree with portions of Justice Main’s dissenting opinion on original submission. Therefore, I dissent from the overruling of the rehearing application.
As Justices Shaw and Main noted in their dissenting opinions, the language used by the legislature in the Alabama Open Meetings Act, § 36-25A-1 et seq., Ala.Code 1975 (“the Act”), is ambiguous with regard to its effect upon the deliberations of a governmental body, a committee, or a subcommittee. This Court must look to legislative intent to resolve the ambiguity. City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala.2006). As Justice Main explained in his dissent on original submission, the Act was drafted to ensure public access to the deliberative processes *141 of public bodies. The construction of the Act in the main opinion on original submission is inconsistent with that purpose. Moreover, it appears that the actions of the Montgomery County Board of Education in this case were an intentional attempt to circumvent the requirements of the Act.[2] Therefore, I respectfully dissent from overruling the application for rehearing in this case.
HARWOOD, Special Justice
(statement of nonrecusal).
Following the recusal in this case of Associate Justice A. Kelli Wise, the Chief Justice of the Alabama Supreme Court requested that I, as a retired Justice of the Court, transfer from inactive status to active-duty status pro tempore for the special and restricted purpose of participating in this case as a Special Justice. I was to have no other duties or responsibilities or authority, and my “activation” would cease automatically upon the issuance of the certificate of judgment in the case. I accepted that assignment, as I have done on several occasions in the past, without there being any attendant monetary remuneration or other emolument of service to be provided.
Following my participation in the per curiam opinion of the Court issued June 15, 2012, in which I voted with the five-member majority, the appellant, Clay C. Slagle, filed an application for rehearing. In conjunction with that application, Mr. Slagle, through his attorney, the Honorable Mark G. Montiel, filed his “Motion for Disqualification and/or Recusal of Retired Justice Bernard Harwood from Participation in this Case on Application for Rehearing on Behalf of Plaintiff/Appellant Clay C. Slagle.” In that motion, Mr. Mon-tiel asserted three grounds for “the disqualification and/or recusal from this case of Retired Justice Bernard Harwood.” First, he cited and set out in full § 147, Art. VI, Constitution of Alabama of 1901 (formerly § 6.08 of Amendment No. 328 to the Alabama Constitution of 1901). That section states:
“Sec. 147.' Prohibited activities.
“(a) No judge of any court of this state shall, during his continuance in office, engage in the practice of law or receive any remuneration for his judicial service except the salary and allowances authorized by law.
“(b) No judge, except a judge of a probate court, shall seek or accept any nonjudicial elective office, or hold any other office of public trust, excepting service in the military forces of the state or federal governments.
“(c) The supreme court shall adopt rules of conduct and canons of ethics, not inconsistent with the provisions of this Constitution, for the judges of all courts of this State.”
Next, Mr. Montiel “contends that the participation of Retired Justice Harwood in this case without notice to the parties and in violation of the Alabama Constitution violates the due process requirements of state and federal constitution. See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 129 S.Ct. 2252 (2009).”
Lastly, Mr. Montiel avers that
*142 “[r]etired Justice Harwood also has maintained an active law practice representing state agencies and bodies, governed by the Alabama Open Meetings Act, during his retirement. This private practice of law attorney representation suggests a possible bias or conflict regarding the issues presented in this case. The probability of actual bias on the part of the judge is too high to be constitutionally tolerable. See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 129 S.Ct. 2252.”
Mr. Montiel requests that I “be disqualified or recused from this case by [my] own order or that of the Court.”[3] Addressing Mr. Montiel’s three grounds in reverse order, I submit the following:
Mr. Montiel’s belief that I have “maintained an active law practice representing state agencies and bodies, governed by the Alabama Open Meetings Act, during [my] retirement,” is simply a misapprehension on his part. The only state agency or body I have represented during my retirement is Shelton State Community College, based in my hometown of Tuscaloosa. I was at all times, commencing with my appointment as a Special Justice in this case, üp to the present, on retainer as counsel for Shelton State. The Alabama Open Meetings Act, codified as § 36-25A-1 et seq., Code of Alabama 1975, applies to “governmental bodies.” Shelton State is not a “governmental body” as that term is defined by the Act (see § 36 — 25A—2(4)); rather, it is an adjunct of the Alabama Department of Postsecondary Education, which, in turn, is simply a department of the Alabama Department of Education. The Alabama State Board of Education directs and controls Shelton State, and Shelton State has no independent or separate governing board, body, or commission. Rather, it is directly controlled by the Alabama Board of Education through that Board’s directives to the chancellor of the Alabama Department of Postsecondary Education.
I do not otherwise represent “state agencies and bodies, governed by the Alabama Open Meetings Act.”
With respect to the issue of my participation in this case as a Special Justice without advance notice having been given to parties to the appeal of my appointment, I do not perceive how such lack of advance notice “violates the due process requirements of state and federal constitution.” By long and well justified tradition, the identity of the regular Justice on the Court to whom an appeal is assigned for initial analysis and issuance of an opinion or other disposition and the identities of the Justices serving on the same division of the Court as that Justice, which Justices will be voting in the appeal, are not disclosed in advance to the parties to an appeal. That nondisclosure is designed to avoid any targeted attempts at outside influence during the deliberative process for the particular appeal. When a Special Justice has been appointed to cast the deciding vote in a case where the participating regular Justices are evenly divided, the logic behind nondisclosure in advance of the identity of the Special Justice is even more compelling. With respect to Mr. Montiel’s concluding citation in sup *143 port of this ground for recusal, Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), I have carefully read that case, and I am unable to locate in its discussion of due-process considerations involved in determining whether a judge should recuse himself or herself, or be disqualified from sitting, any statements that would relate to the issue of advance notice of the appointment of a Special Justice in a particular case.
Finally, turning to the proscription stated in § 147(a), Constitution of Alabama of 1901, my focus is initially upon the issue whether I, as a retired Justice who is serving part-time on the Court at the request of the Chief Justice, for the sole purpose of participating in a particular case, thereby become a “judge of [that] court ... during his continuance in office,” in the context in which those terms are envisioned in § 147(a). In Johnson v. Board of Control of the Employees’ Retirement System of Alabama, 740 So.2d 999 (Ala.1999), the Court was called upon to decide whether a retired circuit judge, who designated on her oath of office as a retired judge that she was to be “inactive” and who immediately thereafter assumed appointed office as a federal district judge, was “holding two' offices of profit,” in contravention of § 280, Art. XVII, Constitution óf Alabama of 1901. The Court concluded that “it is clear that retired, inactive members of the judiciary who are governed by the Judicial Retirement System, are not holding an office, or exercising any power of the State, unless or until they return to active-duty status, either full-time or part-time.” 740 So.2d at 1012. The Court was called upon solely to answer the question whether a retired, inactive member of the judiciary who was governed by the Judicial Retirement System was holding an office of profit. The contrast the Court made with a retired member of the judiciary who returned to active-duty status, either full-time or part-time, was dictum, particularly to the extent that it implicitly opined as to the status of retired judges returning to active-duty status, without making a distinction between those who did so “full-time” and those who .did so only “part-time.”
The precise question now. confronting me has been directly answered by the Court, however, by its adoption of the Canons of Judicial Ethics, which became effective February 1, 1976, and, as to the “Compliance” section, were last amended in 1980. It is to be noted that subsection (c) of § 147 of the Constitution of Alabama of 1901 mandates that “[t]he supreme court shall adopt rules of conduct and canons of ethics, not inconsistent with the provisions of this Constitution, for judges of all courts of this State.” The Court has declared that “ ‘[t]he Canons are not merely guidelines for proper judicial conduct. It is well-settled that the Canons of Judicial Ethics have the force and effect of law.’ In re Sheffield, 465 So.2d 350, 355 (Ala.1984).” Johnson, 740 So.2d at 1011.
The section of the Canons entitled “Compliance With the Canons of Judicial Ethics” provides, in pertinent part, as follows:
“B. Judge Pro Tempore. A judge pro tempore is a person who is appointed to act temporarily as a judge.
“(1) While acting as such, a judge pro tempore is not required to comply with Canon 5C(3), D, E, F, and G, and Canon 6C.
[[Image here]]
“D. Retired and Supernumerary Judges.
“(1) Retired and supernumerary justices or judges, who are not serving on the Supreme Court or on either of the courts of appeals or on any circuit court *144 or district court in the state, in an active duty status, shall not be required to comply with any of these Canons.
“(2) Retired and supernumerary justices or judges, who are serving part time on the Supreme Court or on either of the courts of appeals or on any circuit court or district court in the state, in an active duty status, shall be required to comply with all of these Canons, except Canon 5C(3), D, E, F, G and Canon 6C.
“(3) Retired and supernumerary justices and judges, who are serving full time at the request of the chief justice, on the Supreme Court or on either of the courts of appeals or on any circuit court or district court in the state, in an active duty status, shall be required to comply with all of these Canons.”
(Emphasis supplied.)
It is certain that the Alabama Supreme Court fully intended that the Canons it adopted, including D(2) of the Compliance section, were not inconsistent with the provisions of the Constitution, as mandated by subsection (c) § 147. That being so, it is further clear and certain that the Court concluded that there was a significant distinction between a retired Justice who was serving “part time on the Supreme Court ... in an active duty status,” and one who was “serving full time at the request of the chief justice, on the Supreme Court ... in an active duty status.” Whereas an activated Justice serving full-time would be required to comply with all the Canons, a retired Justice serving only part-time is specifically exempted from complying with Canon 5C(3), D, E, F, G, and Canon 6C. Canon 5F, with which a retired Justice serving part-time on the Supreme Court in an active duty status need not comply, reads as follows: “F. Practice of Law. A judge should not practice law.” Thus, it is inescapable that the Alabama Supreme Court has concluded that a retired Justice serving part-time on the Court may, consistent with the Canons of Judicial Ethics, practice law.
The Supreme Court of Connecticut reached a similar conclusion in Honulik v. Town of Greenwich, 293 Conn. 641, 980 A.2d 845 (2009), in which it addressed the issue “whether a retired justice, by virtue of performing limited judicial acts, necessarily is holding that office.” 293 Conn. at 654 n. 15, 980 A.2d at 854 n. 15. That Court reasoned:
“The decision of the Supreme Court of New Hampshire [in Claremont School District v. Governor, 142 N.H. 737, 712 A.2d 612 (1998),] provides direct support for the notion that temporary performance of duties associated with a judicial office does not equate with holding that office. Other state courts, in addressing claims pertaining to postretirement judicial activity that concededly are distinct from those at issue here and in Claremont School District, also have acknowledged the distinction between performance of judicial duties and status as judicial officeholder. See, e.g., State ex rel. Wilcox v. District Court, 208 Mont. 351, 358, 678 P.2d 209 (1984) (‘retired district judge called in [pursuant to provision allowing for temporary assignment of retired judges] does not become a second incumbent in that office, but simply exercises the powers of a district judge on a temporary basis’); Werlein v. Calvert, 460 S.W.2d 398, 401 (Tex.1970) (‘A retired judge assigned to active duty is authorized to exercise the powers of an office while serving on assignment. He does not by virtue of the assignment, however, hold an office....’) (reh. denied December 31, 1970); Nelson v. Miller, 25 Utah 2d 277, 288, 480 P.2d 467 (1971) (‘we see no constitutional conflict between mandatory retirement for age *145 and legislative authorization for calling a judge back into service upon a “case-to-case” basis’).”
293 Conn. at 655-56, 980 A.2d at 855 (footnote omitted). At another point in its opinion, the Supreme Court of Connecticut observed:
“Finally, other courts’ jurisprudence as to what constitutes an ‘office’ is instructive. In United States v. Hartwell, 73 U.S. (6 Wall.) 385, 393, 18 L.Ed. 830 (1867), the United States Supreme Court, in interpreting a criminal statute proscribing embezzlement by certain officials, articulated a formula to apply in determining whether a particular position constitutes an ‘office.’ According to the Supreme Court, ‘[a]n office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties.’ Id. As one commentator has noted, the Hart-well formulation is descriptive rather than prescriptive, and contemplates a continuum. J. O’Connor, ‘The Emoluments Clause: An Anti-Federalist Intruder in a Federalist Constitution,’ 24 Hofstra L.Rev. 89, 109 (1995). Thus, ‘a position characterized by substantial tenure, duration, emoluments, and duties is the paradigmatic office; conversely, a position possessing none of these attributes would reside at the other end of the continuum as clearly a non-office.’ Id.”
293 Conn. at 657-58, 980 A.2d at 856 (footnotes omitted).
In serving on the Court for the limited purpose of participating in a particular case, I have no “tenure” as such; there is no extended duration of my service; and there are no emoluments.
I am not oblivious to the provisions of § 12-18-7(b), Ala.Code 1975, and pertinent parts of § 12-18-10(e), Ala.Code 1975, which read as follows:
Section 12-18-7(b): “The retiring justice or judge, upon being retired, shall take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state. Thereafter, on the request of the Chief Justice, the presiding judge of one of the courts of appeals or the Governor, any such retired justice or judge may serve on the Supreme Court, on either of the courts of appeals or on any circuit court in the state. Such retired justice or judge, when serving on a court in the absence or disqualification of the regular justice or judge, as the case may be, shall have and exercise all the duties and functions of the regular justice or judge for whom he is substituting. When serving on a court for reasons other than the absence or disqualification of the regular justice or judge, the duties of a retired justice or judge shall be as prescribed by the Chief Justice when serving on the Supreme Court or by the presiding judge when serving on a court of appeals or by the presiding judge, when serving in a circuit court; provided, that nothing contained in this provision shall prevent the Chief Justice from assigning a justice or a judge to special temporary duty in other courts. A recital in the minutes of the court that a regular justice or judge is absent or disqualified and that a retired justice or judge is sitting in his place at the request of the Chief Justice, the presiding judge of one of the courts of appeals or the Governor shall be conclusive evidence of his authority to act.”
Section 12-18-10(e) (in pertinent part): “Every justice or judge who has retired pursuant to this article may, on the request of the Chief Justice, the presiding judge of a court of appeals or the Governor, be called to active duty status and, *146 when serving with the Supreme Court or courts of appeals, shall perform such duties as may be prescribed by the Chief Justice or the presiding judge of the court of appeals with which he is serving and, when serving in a circuit court, shall perform such duties as may be prescribed by the presiding judge in the circuit....
[[Image here]]
“A retired justice or judge of one of the courts of appeals or circuit judge, while serving with the Supreme Court or one of the courts of appeals for reasons other than the absence or disqualification of a justice or judge, shall perform such duties as may be prescribed by the Chief Justice when serving with the Supreme Court, or as prescribed by the presiding judge of the court of appeals with which he may be serving.”
All I know concerning the circumstances underlying my appointment as a Special Justice to participate in this case is that, as stated at the conclusion of the opinion on original deliverance, “Wise, J., recuse[d] herself.” As Justice Parker made clear in his “Statement of Recusal” appended to the opinion on application for rehearing in City of Bessemer v. McClain, 957 So.2d 1061, 1085 (Ala.2006), a Justice may elect to recuse himself or herself without there being any basis for his or her disqualification. Regardless, I revert to, and am guided by in the final analysis, the deliberate determination by the Alabama Supreme Court in adopting the Canons of Judicial Ethics, “not inconsistent with the provisions of [the] Constitution,” that a retired Justice serving on that Court “part-time” may, “not inconsistent with [the] Constitution,” practice law.
In consideration of all the above, I, for my part, decline to recuse myself from participation in the vote on application for rehearing. Because the motion in question asks that I be “disqualified or recused from this case by [my] own order or that of the Court,” I will not presume to anticipate the Court’s own analysis and determination of this issue.

. Furthermore, Montgomery County Board of Education member Charlotte Meadows acknowledged as much in a statement to the press that was admitted into evidence: "It was clear the only reason to form these subgroups was to avoid the media and the public.” She also testified: "I think we met in those groups in those types of settings so we could specifically avoid the media, and I think that’s wrong.” These statements confirm my opinion that the Board’s actions were an intentional attempt to circumvent public access to the deliberative processes of the Board.

. Mr. Montiel graciously states in the introduction to his motion that "[wjhile undersigned counsel has the highest personal regard and respect for Retired Justice Har-wood, the Alabama Constitution necessitates this disqualification and/or recusal.” Reciprocally, I have the highest personal regard for Mr. Montiel, acknowledging his long and accomplished legal career encompassing not only extensive experience as a private practitioner, but also his service as a state circuit judge and on the Alabama Court of Criminal Appeals.