Justice ALBIN,
dissenting.
The New Jersey Constitution provides that “justices and judges shall be retired upon attaining the age of 70 years.” N.J. Const. art. VI, § 6, 113. It does not provide that justices and judges can be recalled to their offices beyond the age of seventy. It does not empower the Legislature to make laws to recall justices and judges beyond that age.
The drafters declined to include in the Judicial Article a number of proposed recall provisions presented at the Constitutional Convention. The drafters were keenly aware that three years earlier the people of New Jersey rejected a proposed Constitution that provided for the recall of judges. Undoubtedly, the eminent and able drafters of the 1947 New Jersey Constitution knew how to write a recall provision.
Nevertheless, the majority conjures a hidden meaning in the simple, clear, and declarative words, “judges shall be retired upon attaining the age of 70 years” — a meaning authorizing the Legislature to pass a law that allows the New Jersey Supreme Court to recall judges without any age limit. By the majority’s thinking, after setting an age for the end of judicial service, the drafters, by their silence, left open a future scenario that allowed for the Supreme Court to recall judges even at the age of 100.
That strained interpretation of our Constitution cannot be justified by the plain words of the Judicial Article, by the context of *40 those words in relationship to other provisions of the Constitution, by the history that led to the drafting of the Judicial Article, by the debates at the Constitutional Convention, by the absence of any contemporaneous recall legislation after the Constitution’s ratification, and by comparison to sister states with similar constitutional retirement provisions that provide for recall of judges in their constitutions.
To be sure, the recall of a talented cadre of retired judges serves an important policy of ensuring the prompt and efficient delivery of justice in a system beset with chronic judicial vacancies due to a dysfunctional political process. There is no legitimate excuse for the Executive and Legislative branches leaving vacancies on the bench of more than ten percent year after year. But the answer to the problem cannot be to ignore the clear dictates of the Constitution for expedient or other seemingly good reasons. There is a right way and wrong way to achieve a worthy end. The Legislature cannot arrogate to itself a power denied to it by the Constitution, and likewise it cannot gift to the Supreme Court a power inconsistent with the Constitution.
If justices or judges are to serve in office beyond the age of seventy, full time or on recall, then the Constitution must be amended. No reasonable interpretation of the Constitution warrants the current recall system. Although I would strike down as unconstitutional the legislation permitting recall of a judge over the age of seventy, I would not upset any judgment rendered by a recall judge based on the de facto officer doctrine. To forestall a short-term catastrophic impact on the judicial process on which the constitutional rights of so many depend, I also would keep the present system in place for a period not to exceed six months to allow the Legislature to pass a conforming amendment, to increase the number of judgeship positions, and/or to fill the multitude of judicial vacancies.
I therefore respectfully dissent.
*41 I.
A.
Article VI — known also as the Judicial Article — provides: “[Jjustices and judges shall be retired upon attaining the age of 70 years. Provisions for the pensioning of the Justices of the Supreme Court and the Judges of the Superior Court shall be made by law.” N.J. Const, art. VI, § 6, H 3. Had the drafters of the Constitution — who were skilled wordsmiths — intended to authorize the Legislature to enact a recall system Paragraph 3 would have read: “[Jjustices and judges shall be retired upon attaining the age of 70 years. Provisions for the recall and pensioning of the Justices of the Supreme Court and the Judges of the Superior Court shall be made by law.” That easy word fix would not have been lost on the drafters.
Other state constitutions with similarly worded mandatory-retirement-age provisions specifically provide for the temporary recall of justices and judges. See, e.g., Alaska Const, art. IV, § 11 (“Justices and judges shall be retired at the age of seventy except as provided in this article.”); Mo. Const, art. V, § 26 (“All judges other than municipal judges shall retire at the age of seventy years, except as provided in the schedule to this article____”); Or. Const, art. VII, § la (“[A] judge of any court shall retire from judicial office at the end of the calendar year in which he attains the age of 75 years. The Legislative Assembly or the people may by law ... [pjrovide for recalling retired judges to temporary active service.”); Pa. Const, art. V, § 16 (“Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years____ A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service----”); Wash. Const, art. IV, §§ 2a, 3a (“A judge of the supreme court or the superior court shall retire from judicial office ... [when] he attains the age of seventy-five years____ [A] majority of the Supreme Court is empowered to authorize ... retired judges ... to perform, temporarily, judicial duties____”).
*42 Those examples suggest that the word “retire” is not so elastic that it can be imbued with contradictory meanings. To retire does not mean to ascend again. At the time of the 1947 Constitution, “to retire” had distinct definitions: “[t]o withdraw from a public station, or from business; as, having made a large fortune, he retired.” Webster’s Revised Unabridged Dictionary 1231 (1913); see also The Century Dictionary 5124 (1913) (defining “retire” as “[t]o withdraw from business or active life”); A New English Dictionary 571-72 (1933) (defining “retire” as “[t]o withdraw from office or an official position; to give up one’s business or occupation in order to enjoy more leisure or freedom (esp. after having made a competence or earned a pension)”). The magical interpretation that the majority gives to the word “retire” does not conform to the plain meaning of that word as understood by the Constitution’s drafters in their time.
The absence of any language about recall in the New Jersey Constitution could end the constitutional analysis. However, if we look further, every other sign evidences that the drafters did not intend to undermine the constitutional age limit on judicial service with a system that allowed the Supreme Court to appoint recall judges without any age limitation.
B.
Another provision of the Constitution clearly shows that the drafters knew how to allow for judges to hold office beyond the age of seventy. At the time of the Constitutional Convention, justices and judges were not restricted from service on the bench on the basis of age and were serving a previously set term of years in office. To cause the least disruption to the judicial system, the new Constitution provided for a conversion period rather than the abrupt dismissal of justices and judges who already were seventy years of age or older. This was accomplished through the Schedule Article — -Article XI, Section 4, Paragraph 1 of the Constitution. See Robert F. Williams, The New Jersey State Constitution 197 (2d ed. 2012) (noting that Schedule *43 Article “contains various phase-in provisions designed to facilitate the smooth transition to the 1947 constitution”). The Schedule Article allowed justices and judges over the age of seventy to continue in service for a temporary period. That Article provides: “No Justice of the new Supreme Court or Judge of the Superior Court shall hold his office after attaining the age of seventy years, except, however, that such Justice or Judge may complete the period of his term which remains unexpired at the time the Constitution is adopted.” N.J. Const, art. XI, § 4, ¶ 1.
Thus, the drafters knew how to and did write into the Constitution a provision that allowed for judicial service beyond the age of seventy. They knew how to write into the Constitution a recall system, but pointedly did not do so.
C.
Certain clauses of the Constitution, such as the “ ‘great ordinances’ are flexible pronouncements constantly evolving responsively to the felt needs of the times.” Vreeland v. Byrne, 72 N.J. 292, 304, 370 A.2d 825 (1977). Fitting into that category are the “due process clause, the equal protection clause, [and] the free speech clause.” Ibid. Other clauses simply frame the “details of governmental administration.” Id. at 304-05, 370 A.2d 825. There, “a literal adherence to the words of the clause is the only way that the expressed will of the people can be assured fulfillment.” Id. at 305, 370 A.2d 825. In that category, for example, falls the provision that “ ‘the Governor shall be not less than thirty years of age.’ ” Ibid, (quoting N.J. Const, art. V, § 1, 112). The gubernatorial age limit is a peremptory directive not subject to an evolving interpretation over time. The same must be said of the provision that “justices and judges shall be retired upon attaining the age of 70 years.” N.J. Const, art. VI, § 6, H 3. Scrupulous adherence should be given to the clear meaning of those words to fulfill the drafters’ intent.
*44 II.
If there were any lingering doubt concerning the meaning of the mandatory-retirement language in the Judicial Article, the history leading up to the adoption of the 1947 Constitution and the debates during the Constitutional Convention dispel it.
The proposed Constitution of 1944, which was not ratified by the people, included a provision that allowed for judges over the mandatory-retirement age of seventy to be recalled for temporary service. That provision read:
No Justice of the Supreme Court or of the Superior Court shall continue in office after he has attained the age of seventy years. Subject to law, the Chief Justice may assign any such judicial officer who has attained the age of seventy year’s to temporary service in the Supreme Court or in the Superior Court, as need appeal's.
[Proposed Revised Constitution (1944), art. V, § 5, ¶ 5.]
The delegates to the 1947 Constitutional Convention had for their consideration the 1944 recall provision in the “Summary of Proposals for Revision of Judicial Article” prepared for the Judiciary Committee. 4 Proceedings of the Constitutional Convention of 1947, at 749.
That, moreover, was not the only proposal for the temporary recall of retired judges before the Convention’s delegates. On behalf of the New Jersey Committee for Constitutional Revision, Evelyn M. Seufert and John Bebout submitted to the Judiciary Committee a draft judicial article containing a provision for the temporary recall of retired judges and justices. That recall proposal provided:
No justice or judge shall remain in continuous service after he has attained the age of seventy years; but the chief justice may assign any such judicial officer who has attained the age of 70 years before his term has expired to temporary service in the supreme court or in the general court, as need appears.
[4 Proceedings, supra, at 28.]
In addition, in commentary to the Judiciary Committee, Seufert stated that the “provision for mandatory retirement at age 70” of judges should be “subject to possible recall to temporary service as need may appear.” 4 Proceedings, supra, at 580.
*45 There was yet another recall proposal submitted to the Judiciary Committee, one by former Chief Justice Thomas J. Brogan. The provision stated:
Upon the retirement of any such Justice or Judge he shall receive a pension equal in amount to the salary which he is receiving at that time. Such Justice or Judge shall be required, if able so to do, to perform such judicial duties and services as may be required of him by designation or order of the Court of Appeals____
[2 Proceedings, supi'a, at 1207 (emphasis added).]
This recall proposal and the others before the Judiciary Committee were rejected and not made part of the final Judicial Article.
Whether to have a judicial retirement age and, if so, setting a retirement age was debated over nine days and thirteen separate sessions in the Judiciary Committee. See, e.g., 4 Proceedings, supra, at 500, 523-24, 540, 557. In ultimately deciding on seventy as the age for mandatory retirement, the drafters balanced a number of factors. One factor was the wisdom and knowledge that experienced judges bring to the bench. 4 Proceedings, supra, at 484 (noting judges over age of seventy “who are alert, able and have over a long period of years acquired a tremendous wealth of legal thinking, wisdom and judgment” (Judge Thomas Madden)); 4 Proceedings, supra, at 135-36 (‘We all remember, doubtless, some instances in which men did some of their best work on the court when they were past 75 years of age.” (Chief Justice Clarence E. Case)). Another factor was the concern about incapacity that afflicts older judges. 4 Proceedings, supra, at 24 (noting observations of Vice-Chairman Nathan L. Jacobs that mandatory-retirement age of seventy would reduce frequency of incapacitated judges). The debates on the Judicial Article included discussions about the option of a system of recalling retired judges to service. See, e.g., 4 Proceedings, supra, at 543 (noting suggestions of Judge Robert Carey that mandatory-retirement age be set at seventy-five and that retired judges be placed on “inactive list” subject to recall); 4 Proceedings, supra, at 168 (noting Wayne D. McMurray’s remarks that retired judges could be subject to recall).
*46 Despite the proposed recall provisions and discussions before the Judiciary Committee, the drafters did not write recall into the Constitution or give the Legislature the authority to do so.
This is not the first time that this Court has construed the import of the absence of a provision in a Constitution. In Committee to Recall Robert Menendez from the Office of U.S. Senator v. Wells, 204 N.J. 79, 86-87, 7 A.3d 720 (2010), we held that New Jersey’s constitutional provision allowing for a recall election of a United States Senator, N.J. Const, art. 1,112, subject to a six-year term of office, violated the Federal Constitution. In reaching that conclusion, we emphasized that the United States Constitution did not have a recall provision whereas the prior Articles of Confederation did. Id. at 85-86, 7 A.3d 720. We also noted that a proposal to include a recall provision in the new Constitution was voted down. Id. at 86, 7 A.3d 720. From that record, we reasoned that “the Framers rejected a recall provision and denied the states the power to recall U.S. Senators.” Ibid.
The result the majority reaches in this case does not square with that interpretative analysis. The drafters did not incorporate into the 1947 Constitution the judicial recall provision in the proposed 1944 Constitution. They also evidently rejected the recall proposals advanced at the Constitutional Convention. The obvious conclusion should be that legislation permitting the recall of judges over the age of seventy runs afoul of the Constitution.
That conclusion is supported by a retrospective interview of Morris M. Schnitzer, the Technical Advisor to the Judiciary Committee of the 1947 Convention. Conversations with Morris M. Schnitzer, 47 Rutgers L.Rev. 1391 (1995). During the interview, Schnitzer observed that the judicial retirement age was adopted to banish the spectacle of aged and mentally incapacitated judges presiding over eases. Id. at 1400-01. When asked whether “it [was] contemplated that judges, once retired at age 70, could be recalled” for temporary service, Schnitzer replied, “Certainly not, since that would have resurrected the example of [judges] who sat long after their peak.” Id. at 1401.
*47 III.
The majority’s reading into our Constitution a legislative right to authorize the recall of retired judges over the age of seventy is contrary to the approach taken by most other states with a constitutional mandatory-retirement provision. Nineteen state constitutions set a mandatory-retirement age for judges. Sixteen of those state constitutions also specifically provide for the recall of retired judges who have aged out.[1] Those sixteen states *48 apparently concluded that such judicial-recall clauses were necessary in light of the mandatory-retirement-age provisions in their constitutions.
Three other state constitutions include a mandatory-retirement age but no provision for the recall of judges who have reached mandatory retirement. See Haw. Const, art. VI, § 3 (“Justices and judges shall be retired upon attaining the age of seventy years.”); N.H. Const, pt. 2, art. 78 (“No person shall hold the office of judge of any court, or judge of probate, or sheriff of any county, after he has attained the age of seventy years.”); Mass. Const, pt. 2, ch. 3, art. I (“[T]hat upon attaining seventy years of age said judges shall be retired.”).
The Hawaii Constitution has a mandatory-retirement age for judges, Haw. Const, art. VI, § 3 (“Justices and judges shall be retired upon attaining the age of seventy years.”), as well as a provision allowing for the recall of retired judges, Haw. Const, art. VI, § 2 (“[A]t the request of the chief justice, retired justices of the supreme court also may serve temporarily on the supreme court, and retired judges ... may serve temporarily on the [lower courts].... ”). The recall provision evidently has not been construed to permit the recall of judges over the age of seventy. The Hawaii Judiciary expressed its support for a constitutional amendment, stating that “the knowledge and experience of such judges are recognized as valuable resources not only as judicial mentors but also to help provide fair and timely disposition of cases.” Hearing on S.B. 650 Before the Haw. S. Judiciary & Labor Comm., 26th Leg. (Feb. 14, 2012) (statement of Rodney A. Maile, Admin. Dir. of the Courts). In 2012, a constitutional amendment was placed before the voters that would have allowed the state’s chief justice to appoint retired judges over the age of seventy as “emeritus judges” to temporarily serve for no longer than three *49 months. Haw. S.B. 650, 26th Leg. (2011). The amendment was voted down.
Only two states with a mandatory-retirement provision and no recall clause in their state constitutions — New Hampshire and Massachusetts — have permitted retired judges to be temporarily assigned for service based on legislative authorization. Claremont Sch. Dist. v. Governor, 142 N.H. 737, 712 A.2d 612 (1998); Opinion of Justices, 362 Mass. 895, 284 N.E.2d 908 (1972).
The New Hampshire Supreme Court concluded that the state legislature has “the constitutional authority to authorize limited temporary assignment of retired justices over age seventy to ensure the adequate and orderly administration of justice,” but that those “retired justices over age seventy [are not invested] with the panoply of powers associated with judicial office.” Claremont, supra, 712 A.2d at 615.
The Supreme Judicial Court of Massachusetts held in an advisory opinion to the Massachusetts Senate, Opinion of Justices, supra, 284 N.E.2d at 913, that the temporary recall of judges and justices by legislation would be permitted despite a proposed constitutional amendment, which stated that “upon attaining seventy years of age ... judges shall be retired.” Without the legislation, which was similar to the Schedule Article in the New Jersey Constitution, N.J. Const, art. XI, § 4, 111, then-serving judges over the age of seventy under the then-existing system (nearly twenty percent of the judiciary) would have been removed immediately upon the ratification of the constitutional amendment, causing a severe and abrupt disruption of the judicial system. Id. at 911-13. In reaching its decision, the Massachusetts high court gave “great weight” to the “unusual and pragmatic considerations” involved as well as to “public policy considerations.” Id. at 913. The advisory opinion does not explain why “pragmatic” and “public policy considerations” were compelling reasons for bypassing the amendment process.
Even accounting for the New Hampshire and Massachusetts experiences, the majority’s approach is an outlier.
*50 IV.
For more than a quarter century after ratification of the New Jersey Constitution, this State had no judicial recall system. The initial Judicial Retirement System Act, L. 1973, c. 140, passed in 1973, only allowed for the recall of judges who had not yet attained the age of seventy, L. 1973, c. 140, § 13. Setting a mandatory-age limit for recall presumably reflected the Legislature’s understanding that the recall of judges over the age of seventy was prohibited by the Judicial Article.
In 1975, the Legislature passed into law the present judicial recall system, which allows retired justices and judges over the age of seventy to be recalled for temporary service. L. 1975, c. 14. The Recall Statute provides that “[sjubject to rules of the Supreme Court,” retired Supreme Court justices over the age of seventy may “be recalled by the Supreme Court for temporary service in the Supreme Court or elsewhere within the judicial system” and that Superior Court judges over the age of seventy may be recalled “for temporary service within the judicial system other than the Supreme Court.” N.J.S.A. 43:6A-13(b). The Recall Statute also endows the retired justice or judge with “all the powers of a justice or judge of the court to which he is assigned.” N.J.S.A. 43:6A-13(c).
The legislation limits the Supreme Court only to its own rules. Thus, per the Recall Statute, the Supreme Court could, if it wished, promulgate a rule that permits the temporary recall of justices and judges who do not exceed the age of 100 — and, according to the majority, that would be consistent with the Constitution’s mandatory-retirement age.[2] Additionally, the Recall Statute invests the Supreme Court with the power to recall retired justices to fill temporary vacancies on the Supreme Court, *51 despite the clear conflict with Article VI, Section 2, Paragraph 1 of the State Constitution. That constitutional provision allows for the Chief Justice only to “assign the Judge or Judges of the Superior Court, senior in service ... to serve temporarily in the Supreme Court.” N.J. Const, art. VI, § 2, H 1. Thus, the Recall Statute unlawfully authorizes the Supreme Court to bypass our Constitution’s prescribed method for filling vacancies on this Court.
The recall legislation is clearly laudatory, but it is not constitutional. Before the passage of the current statute in 1975, the New Jersey Supreme Court requested the views of the Bar “with respect to questions concerning the retirement of judges who have reached the age of 70 years.” The majority references the 1974 report of the Bar Institute and Law Center of New Jersey submitted to the Court and two New Jersey Law Journal editorials published that year. The Bar Institute’s report “conelude[d] that our retired judges should be permitted to return to the bench according to the needs of our court system and according to their abilities to render such service.” The Bar Institute and Law Center of New Jersey, Recall of Judges Past the Age of Mandatory Retirement: An Examination of the Pertinent Issues 14 (Oct. 1974). The report did not conclude that enactment of a statute would pass muster under the Constitution. The 1974 Law Journal editorials calling for the amending of the 1973 Recall Statute to allow for retired judges over the age of seventy to be returned to temporary judicial service contained no meaningful constitutional analysis, and cited no authority other than the Massachusetts advisory opinion. Senior Judges, 97 N.J.L.J. 68 (Jan. 31, 1974); Judicial Service for Judges Retired at Age 70 Who Wish Such Service, 97 N.J.L.J. 188 (Mar. 21, 1974). The 1974 Law Journal editorials endorsing a recall statute, and the more recent Law Journal editorials claiming that the Recall Statute is unconstitutional, cannot guide our decision-making process. Recalling the Recalled Judges, 216 N.J.L.J. 470 (May 19, 2014); Judges We Can’t Recall, 206 N.J.L.J. 742 (Nov. 28, 2011); 70 and Out, 194 N.J.L.J. 962 (Dec. 15, 2008).
*52 In the end, this Court is the final arbiter of the Constitution. Although the Legislature’s policy reasons for enacting the Recall Statute are praiseworthy (to “help speed the administration of justice and, by securing the benefit of years of judicial experience, increase the quality of justice,” Statement to A. No. 1119 (Apr. 1, 1974)), those reasons do not render the Statute constitutional. Moreover, a law’s constitutionality does not turn on public opinion or how it favors the Bar or even the judicial process. The Constitution must be followed even if a true interpretation leads to a result that is not consonant with the immediate interests of the judiciary as an institution.
That is a lesson passed on to us from the landmark case of Marbury v. Madison, 5 U.S. 137,1 Cranch 137, 2 L.Ed. 60 (1803), which stands for the bedrock principle of judicial review and the primacy of the Constitution over legislation. The issue in Mar-bury bears a noticeable similarity to the one before us, however different the facts of the two cases may be. The outgoing President, John Adams, appointed William Marbury a justice of the peace, but Marbury’s commission had not been physically delivered to him before the administration’s final day. Id. at 155, 2 L.Ed. at 66. Marbury sought a writ of mandamus from the Supreme Court ordering the new administration’s Secretary of State, James Madison, to give him his commission. Id. at 153-54, 2 L.Ed. at 66. The Judiciary Act of 1789 conferred on the United States Supreme Court original jurisdiction to issue writs of mandamus. Id. at 173, 2 L.Ed. at 72. In an opinion written by Chief Justice Marshall, the Supreme Court held that it did not have jurisdiction to issue the writ because the Judiciary Act unconstitutionally expanded the Court’s original jurisdiction. Id. at 176, 2 L.Ed. at 73. The Supreme Court struck down that portion of the Judiciary Act that arrogated to the Court a power not vested in it by the Constitution. Id. at 180, 2 L.Ed. at 74.
Here, the Recall Statute arrogates to the New Jersey Supreme Court a power not vested in it by the Constitution — the power to *53 assign retired judges over the age of seventy to active, temporary service in the judiciary in violation of the Judicial Article.
Y.
Although I would declare the Recall Statute unconstitutional as it applies to those retired judges over the age of seventy, no judgment rendered by a recall judge would have been threatened. Under the de facto officer doctrine, a judge’s acts “undertaken in good faith and prior to a judicial declaration of nullity have the force and effect of law notwithstanding a constitutional defect in the enabling legislation.” State v. Celmer, 80 N.J. 405, 418, 404 A.2d 1 (1979). Thus, had my view prevailed, the ruling would not have applied retroactively, except to the defendant who brought the issue before this Court. Additionally, I would have delayed implementation of the decision for 180 days to allow the Executive and Legislative branches time to remedy the constitutional infirmity. See Lems v. Harris, 188 N.J. 415, 463, 908 A.2d 196 (2006) (giving Legislature 180 days to amend marriage statutes or enact alternative legislation to provide equal rights to same-sex couples). During that time, the Legislature would have had a number of options. It could have begun the process of amending the Constitution to allow for the recall of retired judges or to extend the retirement age of judges to, say, seventy-five. It could have created more judgeship positions or, at the very least, filled the many vacancies that so limit the judiciary’s ability to fulfill its mission. It still can.
Justice suffers when the judiciary is understaffed. The oft-heard refrain, “Justice delayed is justice denied,” is true. Cases that are not heard timely compromise the rights of litigants. As of July 1, 2015, there were forty-six vacancies among the 443 Superior Court judgeships authorized by statute, N.J.S.A. 2B:2-1, with seventy-two judges serving on recall, fifty-five of whom are above the mandatory age of retirement. By failing to timely fill the many judicial vacancies, the political branches have created the urgent need for and the judiciary’s dependency on the recall *54 system. However effective the recall system may be, politically created exigencies and pragmatic considerations cannot excuse the use of unconstitutional means to achieve a desirable end.
VI.
Recall judges have served ably and with distinction, and for little compensation. They are to be commended for their selfless service. However, the Recall Statute is in conflict with our State Constitution. Today, by upholding that Statute, the majority gives to the Supreme Court a power not conferred to it by the Judicial Article of the New Jersey Constitution.
I therefore respectfully dissent.
For affirmance — Chief Justice RABNER and Justices LaVECCHIA FERNANDEZ-VINA, SOLOMON, and Judge CUFF (temporarily assigned) — 5.
For dissent — Justice ALBIN — 1.
Not Participating — Justice PATTERSON.

 See Ala. Const, art. VI, § 155 ("[A] judge over the age of seventy may be appointed to the office of supernumerary judge if he is not eligible to receive state judicial retirement benefits.”); Alaska Const, art. IV, § 11 ("Retired judges shall render no further service on the bench except for special assignments as provided by court rule.”); Ariz. Const, art. VI, § 20 ("A retired judge who is temporarily called back to the active duties of a judge____”); Colo. Const, art. VI, § 5 ("Whenever the chief justice deems assignment of a judge necessary to the prompt disposition of judicial business, he may ... assign any ... retired justice or district, probate, or juvenile judge who consents, temporarily to perform judicial duties in any court.”); Conn. Const, art. V, § 6 (providing that supreme court, superior court, and common pleas judges who have attained age of seventy years may serve as state referees with powers of judicial office); Fla. Const, art. V, § 8 ("No justice or judge shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which has been served.”); La. Const, art. V, § 5 ("The supreme court ... may assign a sitting or retired judge to any court."); Mi. Const, art. IV, § 3a (providing that, with approval of Court of Appeals, former judges may serve "temporarily in any court of this State, except an Orphans’ Court”); Mich. Const, art. VI, § 23 ("The supreme court may authorize [certain former] judges to perform judicial duties for limited periods or specific assignments.”); Mo. Const, art. V, § 26 (“Any retired judge ... may be assigned by the supreme court as a senior judge to any court in this state____"); N.Y. Const, art. VI, § 25 ("A retired judge or justice shall serve no longer than ... the year in which he or she reaches the age of seventy-six."); Ohio Const, art. IV, § 6 ("Any voluntarily retired judge, or any judge who is retired under this section, may be assigned with his consent ... to active duty as a judge____”); Or. Const, art. VII, § la ("The Legislative Assembly or the people may by law ... [p]rovide for recalling retired judges to temporary active service on the court from which they are retired....”); Pa. Const, art. V, § 16 ("A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service as may be prescribed by rule of the Supreme Court.”); Tex. Const, art. V, § 1-a (providing "reassignment to active duty [of retired judges] where and when needed”); Wash. Const, art. IV, §§ 2a, 3a (“When necessary for the prompt and orderly administration of justice a majority of the Supreme Court is *48 empowered to authorize judges or retired judges ... to perform, temporarily, judicial duties____”).

 Pursuant to the Recall Statute, MJ.S.A. 43:6A-13, the Court has promulgated Directive 12-01, "Policy Governing Recall for Temporary Service Within the Judicial System” (effective Sept. 1, 2001). The Directive states that "[n]o retired justice or judge shall serve on recall beyond his or her eightieth birthday.” That Directive is simply the Court's own policy determination.